In the District Court of the United States
For the District of South Carolina
BEAUFORT DIVISION

| | |
|---|---|
| Muhammed Dumbuya, #302532, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>John Riley, Director, Aiken County )<br>Detention Center (ACDC); Lt. Gavin, )<br>ACDC; Officer McMath, ACDC; )<br>Aiken County; and the City of Aiken, )<br>)<br>Defendants. )<br>_____) | Civil Action No. 9:05-3257-DCN-GCK<br><br>**REPORT AND RECOMMENDATION**<br>**OF THE MAGISTRATE JUDGE** |

## I. INTRODUCTION

The Plaintiff, Muhammed Dumbuya ("Plaintiff"), presently is incarcerated in the South Carolina Department of Correction's Manning Correctional Institution ("MCI"). He has filed this action against the above-named defendants seeking relief pursuant to Title 42, United States Code Section 1983 for alleged violations of his constitutional rights which occurred during his incarceration as a pre-trial detainee at the Aiken County Detention Center ("ACDC").

This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of Title 28, United States Code, Sections 636(b)(1)(A) and (B), and Local Civil Rules 73.02(B)(2)(c) and (e), D.S.C. The Defendants have filed a motion for summary judgment. [29] As this is a dispositive motion, this Report and Recommendation is entered for review by the District Court.[1]

---

[1] The Complaint named a Lt. Galvin and subsequent pleadings filed by Plaintiff referred to a Lt. Gavin. The person has been identified as Lt. Gallam, and will be referred to in that manner in this Report and Recommendation. The Complaint also named a John Riley as Director of the Aiken County Detention Center; he has been identified as John Rowley and likewise will be referred to by his correct name.

## II. *PRO SE* COMPLAINT

Plaintiff is a *pro se* litigant, and thus his pleadings are accorded liberal construction. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (*per curiam*); *Estelle v. Gamble*, 429 U.S. 97 (1976); *Haines v. Kerner*, 404 U.S. 519 (1972); *Loe v. Armistead*, 582 F. 2d 1291 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir.), *cert. denied, Leeke v. Gordon*, 439 U.S. 970 (1978). Under established local procedure in this judicial district, a careful review has been made of the *pro se* Petition herein pursuant to the procedural provisions of the Anti-Terrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, Title I, § 104, 110 Stat. 1214. This review has been conducted in light of the following precedents: *Denton v. Hernandez*, 504 U.S. 25 (1992); *Neitzke v. Williams*, 490 U.S. 319, 324-25 (1989); *Haines v. Kerner*, 404 U.S. 519 (1972); *Nasim v. Warden, Maryland House of Correction*, 64 F.3d 951 (4th Cir. 1995) (*en banc*), *cert. denied*, 516 U.S. 1177 (1996); *Todd v. Baskerville*, 712 F.2d 70 (4th Cir. 1983).

*Pro se* pleadings are held to a less stringent standard than those drafted by attorneys. *Hughes*, 449 U.S. 5 (1980). Even under this less stringent standard, however, the *pro se* complaint nonetheless may be subject to summary dismissal. The mandated liberal construction afforded to *pro se* pleadings means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so, but a district court may not rewrite a petition to include claims that were never presented. *Barnett v. Hargett*, 174 F.3d 1128 (10th Cir. 1999). Likewise, a court may not construct the plaintiff's legal arguments for him (*Small v. Endicott*, 998 F.2d 411 (7th Cir. 1993)) or "conjure up questions never squarely presented" to the court. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985), *cert. denied*, 475 U.S. 1088 (1986). The requirement of liberal construction, however, does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim

currently cognizable in a federal district court. *Weller v. Dep't of Social Services*, 901 F.2d 387 (4th Cir. 1990).

### III.  FACTUAL BACKGROUND

The facts, either uncontested or taken in the light most favorable to the Plaintiff as the non-moving party, and all reasonable inferences therefrom, to the extent supported by the record, are set forth below.

Plaintiff claims that his constitutional rights were violated in November 2003 when ACDC correctional officers used excessive force when attempting to quell a riot in the C pod. Plaintiff was housed in cell C3 101 on the bottom tier of the C pod.[2] Inmate Nipper, also housed in the C pod, had obtained a broom handle and residents of C Pod were refusing to obey numerous directives of the pod officer to return to their cells.  According to the Incident Report, the inmates were flooding the floors of C pod with water and covering their mouths and faces with their shirts in apparent preparation to combat anti-riot procedures by the officers.[3] The pod officer contacted Lieutenant Gallam, the supervising officer for the shift to inform him of the riot situation on C pod.[4] Lieutenant Gallam gathered as many officers as were available to address the riot in C pod,[5] and also obtained a SA200 pepper ball gun,[6] which is similar to a paintball gun and which fires paintballs which are filled with a powdered form of pepper spray instead of paint.[7] After Lieutenant Gallam arrived at C pod with the four or five officers he could

---

[2]   *See* Exhibit A to Gallam Affidavit, attached to Defendants' Motion for Summary Judgment. [29-2]

[3]   *See* Exhibit A to Gallam Affidavit.

[4]   *See* Gallam Affidavit at ¶ 4.

[5]   *See* Gallam Affidavit at ¶ 8.

[6]   *See* Gallam Affidavit at ¶ 10.

[7]   *See* Exhibit B to Gallam Affidavit.

assemble, the detainees continued to refuse to obey the officers' clear directives to return to their cells, so Lieutenant Gallam fired pepperballs toward the rioting inmates in an effort to quell the disturbance. According to the Defendants, the SA200 Pepper Ball System deploys pepperballs in the same manner and at approximately the same velocity as a common paint ball gun.[8] After the pepper balls were discharged, the detainees obeyed the officers' orders and returned to their cells.

Plaintiff alleges that as he followed orders to return to his cell at the ACDC, Lieutenant Gallam opened fire with his "riot gun," and Plaintiff was struck by two pepperballs. One pepper ball struck near Plaintiff's groin, as Officer McMath looked on. Plaintiff alleges that when he attempted to turn away, Lieutenant Gallam fired a second pepperball, which hit Plaintiff in his back. Plaintiff alleges he immediately requested medical attention, but his request was denied. Lieutenant Gallam contradicts Plaintiff's claim that he was denied medical attention, and states by Affidavit that Plaintiff was given the opportunity to be seen by the medical staff after the officers regained control of C pod; in addition, Plaintiff had access to cold water from the sink basin in his cell that he could have used to wash off any of the powdered pepper spray, if he so desired.[9]

ACDC's medical records reflect that Plaintiff was seen by the medical staff on January 22, 2004; however, Plaintiff did not mention any injury he allegedly had sustained during the riot in C pod in December, 2003.[10]

In March, 2005, after Plaintiff had been transferred to MCI, Plaintiff attempted to file a grievance at MCI with respect to the alleged injuries he received at the ACDC. The grievance

---

[8] *See* Gallam Affidavit at ¶¶ 11-13.

[9] *See* Gallam Affidavit at ¶¶ 14 and 15.

[10] *See* Exhibit C to Gallam Affidavit.

was returned as unprocessed because the ACDC is not within the control of the SCDC. Eight months later, on November 11, 2005, Plaintiff commenced this action against ACDC Director John Rowley (incorrectly named in the caption as "Riley), Lt. Gallam (incorrectly named in the caption as Gavin), and Officer McMath, seeking $5 Million in relief. [1]

On February 1, 2006, Plaintiff filed a motion seeking to amend his complaint to add allegations against the City of Aiken and the County of Aiken. [9] The motion to amend was granted by the undersigned United States Magistrate Judge on February 3, 2006. [10] Accordingly, on February 13, 2006, Plaintiff filed an amended complaint to add as defendants the City of Aiken and the County of Aiken. [11]

On March 24, 2006, the defendants Aiken County, Lieutenant Gallam, John Rowley, and the City of Aiken (collectively, the "Defendants") filed an amended answer, requesting dismissal of the complaint pursuant to Rule 12(b)(6), Fed.R.Civ.P., among other grounds.[11] [20] On May 19, 2006, the Defendants filed a Motion for Summary Judgment, a Memorandum, and affidavits and exhibits. [29] By order of this Court filed May 22, 2006, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the Plaintiff was advised of the summary judgment procedure and the possible consequences if he failed to respond adequately. [33]

Plaintiff filed a motion for discovery [35], and a motion for an extension of time in which to reply to Defendant's Summary Judgment Motion, both of which were granted by the undersigned; Plaintiff was ordered to file his response by July 26, 2006. [36; 37] Defendants served their discovery responses upon Plaintiff on July 10, 2006. [38]

On July 10, 2006, Plaintiff filed a motion which sought an order to compel production of documents from the Defendants on the grounds that Defendants had failed to comply with

---

[11] Service was not accomplished on Officer McMath, who is no longer employed at the ACDC and could not be located.

Plaintiff's request. [41]  However, the court was unable to determine the information that Plaintiff sought in that motion because the alleged offending pleadings were not attached, and Plaintiff failed to offer any explanation as to the alleged deficiencies in the Defendants' responses.  Also on July 20, 2006, Plaintiff filed a motion for another extension of time in which to respond to Defendants' Motion for Summary Judgment. [39]  By Order dated July 21, 2006, Plaintiff's motion to compel was denied, and Plaintiff's motion for an extension of time in which to reply to Defendants' Motion was granted, with the explicit warning to Plaintiff that the court's extension of time was the "second and last extension" Plaintiff would receive, and, further, that Plaintiff's response was to be filed on or before August 7, 2006. [43]

Plaintiff failed to file a response to Defendants' Motion for Summary Judgment. Accordingly, on August 17, 2006, the undersigned issued a Report and Recommendation that the Plaintiff's Amended Complaint be dismissed against all defendants for failure to prosecute. [46] Plaintiff timely filed an Objection to the Report and Recommendation, and the District Judge issued an Order on August 30, 2006 referring the case to the undersigned. [48]  Thereafter, Plaintiff filed a Motion for appointment of counsel and a motion for a hearing (pre-trial conference). [49; 50]  The Defendants filed a response in opposition to Plaintiff's request for appointment of counsel. [51]

On September 21, the undersigned issued orders to the Plaintiff and the Defendants to answer special interrogatories issued by the court, which requested information about the grievance Plaintiff claimed to have filed at ACDC. [52; 53]  The Defendants responded by providing the court with the affidavit of Amy Dicks, ACDC's Inmate Records Custodian, which stated that "there were no grievances filed by the Plaintiff during his incarceration at ACDC, beginning November 1, 2003, until his transfer into the custody of the South Carolina

Department of Corrections."[12] [54-1; 54-2] Ms Dicks stated by Affidavit: "Upon review of the Plaintiff's inmate file, it is apparent that he did not file any inmate grievances during his incarceration at the Aiken County Detention Center."[13] Attached to the affidavit was a complete copy of Plaintiff's inmate file.

Plaintiff responded to the court's special interrogatory by stating that he filed a grievance at ACDC on November 19, 2003. He did not have a copy of it and was told by ACDC grievance personnel that a copy would not be provided to him until the grievance was answered. [55] Plaintiff also filed an objection to Defendants' Response to the court ordered interrogatories; Plaintiff stated that because Ms. Dicks was "only" a Records Custodian, and "she 'cannot' state that he has 'never' filed a grievance and turned it in to the person who claimed to be the grievance personnel. Thus, she can only say what is contained in his file, not that he did NOT file a grievance."[14]

On October 6, 2006, the Defendants filed a Motion for Protective Order [59] and on October 20, 2006 the Plaintiff filed a Motion for Protective Order and a Motion for Stay until Plaintiff had obtained the information he sought in his discovery directed to the Defendants. [60] Plaintiff also filed a Response in Opposition to Defendants' motion for Protective Order, and a Motion to Compel Defendants' responses to his discovery. [62] The Defendants, in turn, filed a response in opposition to Plaintiff's motions [63] and the matter is now ripe for review by the undersigned United States Magistrate Judge.

---

[12] ACDC does not have an Inmate Grievance Coordinator. Ms. Dicks has been the Records Clerk at the ACDC for the past six (6) years. *See* Affidavit of Amy Dicks [54-2] at ¶¶ 2-3.

[13] *See* Affidavit of Amy Dicks [54-2] at ¶ 5.

[14] *See* Plaintiff's Objection [56] (underlining in original document).

## V.  SUMMARY JUDGMENT STANDARD

The motion for summary judgment is governed by the holding in *Celotex Corporation v. Catrett*, 477 U.S. 317, 323 (1986):

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation there can be no "genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

Rule 56 states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that:  (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law.  As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant.  *Id.* at 257.  In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party.  *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest

on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id*. at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. When Rule 56(e) has shifted the burden of proof to the non-movant, he must provide existence of every element essential to his action which he bears the burden of adducing at a trial on the merits.

## VI.  DISCUSSION

### A.  Whether Plaintiff Exhausted his Administrative Remedies Prior to Filing this Action

As a threshold matter, the Plaintiff has failed to exhaust the administrative remedies available at ACDC with resepct to the events of which he complains. The Prison Litigation Reform Act ("PLRA") requires that a prisoner exhaust administrative remedies before filing a § 1983 action concerning his confinement. 42 U.S.C. § 1997e(a). The revised PLRA states:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

It is well established that the exhaustion requirement is mandatory, *Anderson v. XYZ Correctional Health Services, Inc.*, 407 F.3d at 677, and that the requirement "applies to all inmate suits about prison life," whether they involve general circumstances or particular episodes and whether they allege excessive force or some other wrong. *Porter v. Nussle*, 534

U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002); *see also Booth v. Churner*, 532 U.S. 731, 121 S.Ct. 1819, 1820, 149 L.Ed.2d 958 (2001) ("Under 42 U.S.C. § 1997e(a), an inmate seeking only money damages must complete any prison administrative process capable of addressing the inmate's complaint and providing some form of relief, even if the process does not make specific provision for monetary relief."). Failure to exhaust all levels of administrative review is not "proper exhaustion" and will bar actions filed by inmates under any federal law, including Section 1983. *Woodford v. Ngo*, 548 U.S. —, 126 S.Ct. 2378, 2386, 165 L.Ed.2d 368 (2006).

In the present case, Plaintiff stated in his Complaint that on March 10, 2005, when he was incarcerated in SCDC's MCI, he submitted a grievance regarding the claims he raised in his complaint. Plaintiff attached to his Complaint a copy of the MCI grievance, which bore the statement that the grievance was returned to him as unprocessed because the ACDC was not within the control of the SCDC.

A plaintiff's failure to exhaust administrative remedies under 42 U.S.C. § 1997e(a) is an affirmative defense which the defendants have the burden to plead and prove. *Anderson*, 407 F.3d at 681. The Defendants, in their answer and in their Memorandum in support of their motion for summary judgment, argue that Paltiniff failed to exhaust his administrative remedies. Indeed, in response to the court's special interrogatories, Defendants have produced to the court the Plaintiff's complete file kept during the time he was a pre-trial detainee housed at ACDC, and the court's review reveals that Platiniff did not file any grievances at all. Because Plaintiff failed to exhaust his administrative remedies, his claims should be dismissed pursuant to the Prison Litigation Reform Act.

### B. Plaintiff Has Failed to Show that Excessive Force was Used

Notwithstanding the Recommendation that this action be dismissed on the grounds that Paltiniff failed to exhaust his administrative remedies, this court's review of this action indicates that it is without merit and should be dismissed.

Plaintiff was a pretrial detainee at the time of the events giving rise to this action. The Fourth Circuit Court of Appeals has held that excessive force claims of pretrial detainees are governed by the Due Process Clause of the Fourteenth Amendment. *Carr v. Deeds,* 453 F.3d 593, 605 (4th Cir. 2006), *citing Riley v. Dorton*, 115 F.3d 1159, 1166 (4th Cir. 1997) (en banc). Under that standard, the use of force violates the Due Process Clause if it is intended as punishment. *United States v. Cobb*, 905 F.2d 784, 788-789 (4th Cir. 1990). Punitive intent may be inferred when the application of the force was not reasonably related to a legitimate non-punitive objective. Furthermore, under Fourth Circuit caselaw, this Court evaluates the extent of the alleged injuries under co-extensive Eighth Amendment standards. *Grayson v. Peed*, 195 F.3d 692, 696-697 (4th Cir. 1999).

To succeed in an excessive force claim under the Due Process Clause, the plaintiff must first demonstrate "that Defendants 'inflicted unnecessary and wanton pain and suffering'" upon the detainee. *Taylor v. McDuffie*, 155 F.3d 479, 483 (4th Cir. 1998), *cert. denied*, 525 U.S. 1181, 119 S.Ct. 1121, 143 L.Ed.2d 115 (1999), *quoting Whitley v. Albers*, 475 U.S. 312, 320, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986). The proper analysis under the Fourteenth Amendment is "whether the force applied was 'in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" *Taylor,* 155 F.3d 479 at 483, *quoting Whitley v. Albers*, 475 U.S. at 320-21. "Even if there is a genuine issue of material fact as to whether Defendants behaved maliciously or sadistically after the need for force has subsided," plaintiff must also demonstrate that the injuries were "more than *de minimis* " or that

" 'the force used [is] of a sort repugnant to the conscience of mankind . . . or the pain itself [is] such that it can properly be said to constitute more than *de minimis* injury.' " *Carr v. Deeds*, 453 F.3d at 605-606, *quoting Taylor v. McDuffie,* 155 F.3d at 483, *in turn quoting Norman v. Taylor*, 25 F.3d 1259, 1263 n. 4 (4th Cir.1994) (en banc).  Simply stated, the application of force which results in injuries found to be *de minimis* does not constitute excessive force under the Fourteenth Amendment.  *Riley v. Dorton*, 115 F.3d at 1167-68; *see also Taylor v. McDuffie*, 155 F.3d 479, 484 (4th Cir. 1998), *cert. denied*, 525 U.S. 1181, 119 S.Ct. 1121, 143 L.Ed.2d 115 (1999).

The Courts that have addressed use of force cases, especially in the light of a riot situation, have been careful to point out the need to look at the circumstances confronting the officer at the time of the incidents. "[P]rison administrators are charged with the responsibility of ensuring the safety of the prison staff, administrative personnel, and visitors, as well as the 'obligation to take reasonable measures to guarantee the safety of the inmates themselves.'" *Whitley*, 475 U.S. at 320, 106 S.Ct. at 1084 (internal citations omitted).  The *Whitley* Court continued this reasoning stating that, "[i]n this setting, a deliberate indifference standard does not adequately capture the importance of such competing obligations, or convey the appropriate hesitancy to critique in hindsight decisions necessarily made in haste, under pressure, and frequently without the luxury of a second chance." *Id.*  The reasoning and holding in *Whitley* dealt with an Eighth Amendment analysis, but were adopted by the Fourth Circuit in *Taylor v. McDuffie* to be used in a Fourteenth Amendment analysis.

### C.  Lt. Gallam acted with Good Faith in quelling the disturbance

In quelling the disturbance on C Pod, Lieutenant Gallam acted reasonably, pursuant to accepted law enforcement practices, in a good faith effort to quell a prison riot, where Inmate

Nipper had possession of the broom handle, which was a potentially deadly weapon.[15] He and the other officers deployed non-lethal force to regain control of rioting inmates, so that the potentially deadly weapon could be found. Plaintiff has not shown that any actions taken by Lieutenant Gallam and the other officers were inconsistent with the policies of the Aiken County Detention Center, or were unnecessary for the security and safety of the staff, facility, and other inmates at the ACDC.

Furthermore, Plaintiff has failed to produce sufficient evidence from which a jury could conclude that any official of ACDC employed force against him in a malicious or sadistic manner. In the present case, Plaintiff alleges he was struck by two pepperballs. He claims that one of the pepperballs hit him in the leg, and the other hit him in the back.[16] The pepperballs, deployed through the use of a standard paint-ball gun, are considered less than lethal.[17] The Plaintiff was given the opportunity to be seen by the medical staff once the riot situation was diffused, and the Plaintiff had access to cold water in his room from his sink that could have been used to wash off any of the powdered pepper-spray that may have been on his body.[18] Plaintiff did not request medical assistance after being hit with the pepper ball gun, and, when he was seen by the ACDC medical staff, a full month after the incident, the medical records show that Plaintiff made no mention of any injuries he might have received during the riot incident.[19] To the extent that Plaintiff suffered any injury at all, his injuries were *de minimis*. Plaintiff has failed to allege any injury that would qualify as more than *de minimis*, and he has failed to

---

[15]     *See* Gallam Affidavit at ¶ 20.

[16]     *See* Amended Complaint.

[17]     *See* Gallam Affidavit at ¶ 13; *see also* Exhibit B to the Gallam Affidavit.

[18]     *See* Gallam Affidavit at ¶¶ 14 and 15.

[19]     *See* Exhibit C to Gallam Affidavit.

establish any violation of his constitutional rights due to the alleged excessive force.  It is recommended that Plaintiff's claim of excessive force be dismissed.

## D.  Plaintiff Has Failed to Establish Any Theory of Liability
## With Respect to Defendant Rowley

In *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 98 S.Ct. 2018 (1978), the United States Supreme Court held that a claim based on the doctrine of *respondeat superior* does not give rise to a claim under 42 U.S.C § 1983.  In other words, it is clear that the personal participation of a defendant is a necessary element of a Section 1983 claim against a government official in his individual capacity.  Plaintiff has failed to allege or prove the direct participation on the part of Defendant Rowley in any of the alleged events occurring during the time Plaintiff was housed at the ACDC

A claim against the any of the individual Defendants, in their individual capacities, requires a showing of personal involvement.  "[I]t is well-settled that '[i]n order for an individual to be liable under § 1983, it must be 'affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights.'"  *Davis v. D.S.S. of Baltimore Cty.*, 941 F.2d 1206 (4th Cir. 1991) (unpublished opinion)(citations omitted); *see also Trulock v. Freeh*, 275 F.3d 391 (4th Cir. 2001).  Additionally, to state a Section 1983 claim, a plaintiff must show that he suffered a specific injury as a result of specific conduct of a Defendant, and an affirmative link between the injury and that conduct.  *See Rizzo v. Goode*, 423 U.S. 362, 371-372, 96 S.Ct. 598, 604 (1976).  The record demonstrates no evidence of personal involvement on the part of Defendant Rowley.  In fact, the Affidavit of Defendant Rowley states he was not present at the ACDC on the night of the incident alleged by the Plaintiff.[20]  Furthermore, Plaintiff

---

[20]     *See* Affidavit of Rowley.

has not alleged that Defendant Rowley was personally involved in the incident.[21]  Plaintiff's claims against him should be dismissed.

### E.  The City of Aiken Is Not a Proper Party to this Suit

The City of Aiken is a municipality in the State of South Carolina.  Under Section 1983, in order for a Plaintiff to establish liability on the part of a municipality, the Plaintiff must show that the local governmental entity employs the tortfeasor, and that there is an official policy or custom on the part of the local governmental entity that is the direct cause of the constitutional deprivation.  *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 94 S.Ct. 2018 (1978).  As the United States Supreme Court held in *Monell*:

> We conclude, therefore, that a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.[22]

Therefore, under the requirements of *Monell*, in order to establish liability for an alleged constitutional injury under Section 1983 on the part of a local governmental entity, such as the City of Aiken, a plaintiff must show that the injury is the result of an act or omission on the part of an employee of the governmental entity who was acting pursuant to an official policy or custom of the governmental entity.  In the instant case, all of the allegations set forth in the Plaintiff's Complaint are related to acts or omissions taken at the ACDC by employees of the Aiken County Detention Center.[23]  At the time of the incidents alleged in the Complaint, the Aiken County Detention Center was under the control of Aiken County.[24]  Subsequently, the

---

[21]     *See* Complaint.

[22]     *Monell*, 436 U.S. at 694, 98 S.Ct. at 2037-2038.

[23]     See generally, Complaint.

[24]     *See* Frommer Affidavit at ¶ 3.

Sheriff of Aiken County took control of the ACDC.[25]  The City of Aiken has never been in control of the ACDC.[26]  Lastly, the City of Aiken does not, and never has, employed anyone who concurrently worked at the ACDC.[27]  Therefore, the Plaintiff's claims against the Defendant City of Aiken should be dismissed.

### F.  Aiken County Is Not a Proper Party to this Suit

Plaintiff also has named Aiken County as a defendant in this action.  Aiken County is a local governmental entity in the State of South Carolina.  At the time of the alleged incident complained of by the Plaintiff, the ACDC was under the control of Aiken County.  As discussed above, in order for a Plaintiff to establish liability on the part of a local governmental entity under 42 U.S.C.A. § 1983 the Plaintiff must show that the local governmental entity employees the tortfeasor, and that there is an official policy or custom, on the part of the local governmental entity, that is the direct cause of the constitutional deprivation.  *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 94 S.Ct. 2018 (1978).  As the United States Supreme Court held in *Monell*:

> [A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents.  Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.[28]

Furthermore, it has been held that a municipality cannot be held liable for an official policy or custom if it has been determined that the individual defendants did not violate the plaintiff's constitutional rights.  *City of Los Angeles v. Heller*, 475 U.S. 796, 799, 106 S.Ct. 1571 (1986).

---

[25]   *Id.*

[26]   *See* Frommer Affidavit at ¶ 6.

[27]   *Id.*

[28]   *Monell,* 436 U.S. at 694, 98 S.Ct. at 2037-2038.

In the present case, as discussed above, the individual defendants did not violate the Plaintiff's consitutional rights. Therefore, Plaintiff's claim against Aiken County should be dismissed.

## RECOMMENDATION

Based upon the foregoing, it is recommended as follows:

**Defendants' Motion for Summary Judgment [29] should be granted;**

**Plaintiff's Motion to Appoint Counsel [49] is moot;**

**Plaintiff's Motion for Hearing [50] is moot;**

**Defendants' Motion for a Protective Order [59] is moot;**

**Plaintiff's Motion for a Protective Order [60] is moot;**

**Plaintiff's Motion to Stay [60] is moot;** and

**Plaintiff's Motion to Compel [62] is moot.**

George C. Kosko
United States Magistrate Judge

November 30, 2006
Charleston, South Carolina

### **Notice of Right to File Objections to Magistrate Judge's "Report and Recommendation"**
### **& The Serious Consequences of a Failure to Do So**

The parties are hereby notified that any objections to the attached Report and Recommendation (or Order and Recommendation) must be filed within **ten (10) days** of the date of its service. 28 U.S.C. § 636 and Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three days for filing by mail. Fed. R. Civ. P. 6. Based thereon, this Report and Recommendation, any objections thereto, and the case file will be **delivered to a United States District Judge** fourteen (14) days after this Report and Recommendation is filed. Advance Coating Technology, Inc. v. LEP Chemical, Ltd., 142 F.R.D. 91, 94 & n. 3, 1992 U.S.Dist. LEXIS® 6243 (S.D.N.Y. 1992). A magistrate judge makes only a recommendation, and the authority to make a final determination in this case rests with the United States District Judge. *See* Mathews v. Weber, 423 U.S. 261, 270-271 (1976); and Estrada v. Witkowski, 816 F. Supp. 408, 410, 1993 U.S.Dist. LEXIS® 3411 (D.S.C. 1993).

During the period for filing objections, **but not thereafter**, a party must file with the Clerk of Court specific, written objections to the Report and Recommendation, if he or she wishes the United States District Judge to consider any objections. **Any written objections must *specifically identify* the portions of the Report and Recommendation to which objections are made *and* the basis for such objections.** *See* Keeler v. Pea, 782 F. Supp. 42, 43-44, 1992 U.S.Dist. LEXIS® 8250 (D.S.C. 1992); and Oliverson v. West Valley City, 875 F. Supp. 1465, 1467, 1995 U.S.Dist. LEXIS® 776 (D.Utah 1995). Failure to file specific, written objections shall constitute a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the United States District Judge. *See* United States v. Schronce, 727 F.2d 91, 94 & n. 4 (4th Cir.), *cert. denied*, Schronce v. United States, 467 U.S. 1208 (1984); and Wright v. Collins, 766 F.2d 841, 845-847 & nn. 1-3 (4th Cir. 1985). Moreover, if a party files specific objections to a portion of a magistrate judge's Report and Recommendation, but does not file specific objections to other portions of the Report and Recommendation, that party waives appellate review of the portions of the magistrate judge's Report and Recommendation to which he or she did not object. In other words, a party's failure to object to one issue in a magistrate judge's Report and Recommendation precludes that party from subsequently raising that issue on appeal, even if objections are filed on other issues. Howard v. Secretary of HHS, 932 F.2d 505, 508-509, 1991 U.S.App. LEXIS® 8487 (6th Cir. 1991). *See also* Praylow v. Martin, 761 F.2d 179, 180 n. 1 (4th Cir.)(party precluded from raising on appeal factual issue to which it did not object in the district court), *cert. denied*, 474 U.S. 1009 (1985). In Howard, supra, the Court stated that general, non-specific objections are *not* sufficient:

> **A general objection to the entirety of the [magistrate judge's] report has the same effects as would a failure to object.  The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the [magistrate judge] useless.  \* \* \*  This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act.  \* \* \*   We would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error.**

*Accord* Lockert v. Faulkner, 843 F.2d 1015, 1017-1019 (7th Cir. 1988), where the Court held that the appellant, who proceeded *pro se* in the district court, was barred from raising issues on appeal that he did not specifically raise in his objections to the district court:

> **Just as a complaint stating only 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review.  \* \* \*  A district judge should not have to guess what arguments an objecting party depends on when reviewing a [magistrate judge's] report.**

*See also* Branch v. Martin, 886 F.2d 1043, 1046, 1989 U.S.App. LEXIS® 15,084 (8th Cir. 1989)("no de novo review if objections are untimely or general"), which involved a *pro se* litigant; and Goney v. Clark, 749 F.2d 5, 7 n. 1 (3rd Cir. 1984)("plaintiff's objections lacked the specificity to trigger *de novo* review").

**This notice, hereby, apprises the parties of the consequences of a failure to file specific, written objections.**  *See* Wright v. Collins, supra; and Small v. Secretary of HHS, 892 F.2d 15, 16, 1989 U.S.App. LEXIS® 19,302 (2nd Cir. 1989).  Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections addressed as follows:

**Larry W. Propes, Clerk**

**United States District Court**

**Post Office Box 835**

**Charleston, South Carolina 29402**
